### IN THE UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF ARKANSAS
### EASTERN DIVISION

**BOBBIE BROWN**                                                              **PLAINTIFF**

V.                               **No. 2:07CV00123-BD**

**MICHAEL J. ASTRUE,**
**Commissioner of Social Security**                              **DEFENDANT**

<u>**MEMORANDUM OPINION AND ORDER**</u>

Plaintiff Bobbie Brown seeks judicial review of a final decision of the

Commissioner of the Social Security Administration ("Commissioner") denying her claim

for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C.

§§ 416(I), 423, 1381-1382c.  This action is brought under § 205(g) of the amended Act,

42 U.S.C. § 405(g), as incorporated by reference through 42 U.S.C. § 1383(c)(3) (the

"Act").

## I.    ADMINISTRATIVE PROCEEDINGS

The Plaintiff filed an application for disability insurance benefits on February 15,

2005, alleging disability since July 28, 2004. (Tr. 63-65)  Her claims were denied initially

and upon reconsideration. (Tr. 46-48, 55-56)  At the Plaintiff's request, a hearing was

held on April 25, 2007, before an Administrative Law Judge ("ALJ").[1]  The Plaintiff

testified at the hearing (Tr. 597-625), as did her husband (Tr. 626-33) and a vocational

expert.  (Tr. 633-36)  The Plaintiff was represented by her attorney at the hearing. (Tr.

---

[1] The Honorable David J. Manley.

594)  On June 27, 2007, the ALJ issued his decision denying the Plaintiff's claim.  (Tr.

21-29)  On September 11, 2007, the Appeals Council denied her request for review (Tr.

6-8), making the ALJ's decision the final decision of the Commissioner.  It is from this

decision that the Plaintiff seeks judicial review.

## II.    BACKGROUND

The Plaintiff claimed disability based on bladder problems[2] and anxiety.  (Tr. 81)

At the time of the hearing, Plaintiff was fifty years old, with two years of college

education.  (Tr. 21, 86, 597-598).  She had past relevant work as a cashier, an assembly

line worker, and a substitute teacher.  (Tr. 21, 82-83, 88-95, 101-102, 598-605)  She lived

with her husband and fourteen-year-old daughter. (Tr. 605)  The Plaintiff testified that she

had experienced problems with her nerves for years but that the problems had worsened

as she had aged.  Her medications at the time of the hearing included Seroquel,

Alprazolam, iron for anemia, and Aleve for headaches.  (Tr. 146)

The Plaintiff's activities of daily life included getting her daughter off to school in

the mornings, cleaning house, cooking, going to the gym twice a week, visiting her

mother, driving, and regularly attending church and Bible study.  (Tr. 610-12)  In 2006,

---

[2] Plaintiff apparently does not pursue her claim of disability based on urinary
incontinence in her appeal of the Commissioner's decision.  Accordingly, the Court will
review the ALJ's decision that the Plaintiff's mental condition did not render her disabled
under the Act.

she was able to host a Christmas dinner at her home for ten to twelve family members.
(Tr. 606-07)

Plaintiff had been treated for emotional and mental problems since 2001. Her
medical history is extensive. George Conner, M.D., Plaintiff's primary care doctor,
diagnosed depression with anxiety in March, 2002, and prescribed Effexor. (Tr. 194) He
has treated the Plaintiff from that time forward. Dr. Conner and other medical providers
have prescribed various drugs over the years to treat Plaintiff's anxiety, including
Lexapro (Tr. 186, 185, 184, 282), Ativan (Tr. 339-40), Zoloft. (Tr. 266), Paxil. (Tr.
251-52), Lorazepam. ( Tr. 277-78), Ambien. (Tr. 284, 282, 280, 424-30, 417-18, 339-40),
Seroquel (Tr. 281), Xanax (Alprazolam) (Tr. 296-98), Abilify, Cogentin, Sonata. (Tr.
454-58) and Prozac (Tr. 339-40).

On April 26, 2005, the Plaintiff underwent a consultative mental status evaluation
performed by Charles Spellman, Ph.D. (Tr. 218) At the time she was taking Paxil,
Lexapro, Concerta, Lorazepam, and Ativan. (Tr. 218). Dr. Spellman diagnosed post
traumatic stress disorder but noted that the Plaintiff "fixes complete meals, goes shopping
for groceries, drives a vehicle, and attends church regularly. She pays bills. She manages
the family money. She has friends. . . . She is involved in her daughter's school activities.
. . . A typical day might include visiting her mother, doing housework, checking on her
daughter at school. . . . Her plans are that, perhaps, she would like to travel in the future
but not [too] far at one time." (Tr. 220) Dr. Spellman found no areas of significant

3

limitation in adaptive functioning and no evidence of exaggeration or malingering.

(Tr. 220-21)  He found no evidence of "unusual passivity, dependency, aggression,

impulsiveness, or withdrawal.  (Tr. 220) Although Plaintiff complained of memory

problems, Dr. Spellman noted that "possible memory loss . . . did not seem significant

enough to warrant a diagnosis."  (Tr. 220)

On June 30, 2006, the Plaintiff was admitted to the emergency room of the Baptist

Memorial Hospital in Memphis with psychosis.  She was given injections of Haldol and

Ativan.  (Tr. 354, 358).  The next day, on July 1, 2006, the Plaintiff was involuntarily

committed to Lakeside Behavioral Health System for acute psychosis with delusional type

behavior.  During her hospitalization, Plaintiff was placed on Ambien for sleep and

Haldol injections twice a day for acute exacerbation of psychotic symptomatology.  The

Haldol was tapered down and eventually discontinued.  The Plaintiff was discharged on

July 10, 2006, with a final diagnosis of psychosis and a global assessment of functioning

("GAF") of 80.  Her discharge medications included Abilify, Cogentin, and Sonata. (Tr.

454-58)

On July 17, 2006, the Plaintiff was admitted to Counseling Consultants as an

outpatient.  She was diagnosed with generalized anxiety disorder, psychosis, and possible

bipolar disorder with psychotic features. (Tr. 400-401)  On July 24, 2006, the Plaintiff

was prescribed Abilify, and Sonata and Cogentin were discontinued. (Tr. 399)  During a

medication management appointment on June 31, 2007, the Plaintiff was diagnosed with a mood disorder and psychosis. She was also assigned a GAF score of 48. (Tr. 402-406)

On July 28, 2006, Dr. Conner saw the Plaintiff for a follow-up for her psychosis. He noted that she was much improved with no obvious psychotic behavior. Dr. Conner increased the dosage of Abilify. (Tr. 434)

On December 8, 2006, the Plaintiff was seen by Jack Morgan, M.D., a psychiatrist. Dr. Morgan noted that the Plaintiff's mood was stable and that there were no overt psychotic symptoms. He assigned her a GAF of 70. (Tr. 444) During a January 19, 2007 office visit, Dr. Morgan noted that the Plaintiff was feeling well and was working out at a gym at least once a week. He continued to prescribed Seroquel and Xanax. (Tr. 445)

On a March 2, 2007 visit to Dr. Morgan, the Plaintiff reported that she was feeling more relaxed and "calmed down." Dr. Morgan continued to diagnose depressive disorder and anxiety disorder. On March 9, 2007, Dr. Morgan increased the dosage of Seroquel because the Plaintiff reported not sleeping. (Tr. 446).

In an April 25, 2007 letter, Dr. Conner stated:

I have been a primary care provider for Bobbie A. Brown since December of 2001. I have seen her for a variety of complaints and problems. I have seen no evidence of malingering of deceptive behavior. She has suffered from anxiety and anxiety-related illness during the years I have seen her. Last year she suffered with an episode which caused psychosis and required her hospitalization. Since that time her emotional state would not allow employment. I have been concerned since that time she would not be able to return to full time employment. She has been in a relatively stable condition over the past few months but because of the continued problems she has with stress and anxiety in normal daily activity, she is

5

not able to tolerate full time employment.  In my opinion, she is not able to
return to work now or in the future.

(Tr. 448).

On May 31, 2007, Dr. Morgan noted that the Plaintiff was "doing fairly well."

(Tr. 449)  He noted that there were occasions, such as preparing for special occasions

such as her grandson's graduation party, when the Plaintiff had "some feeling of tension

or emotional distress," but that it was "nothing severe."  (Tr. 449)  He assigned her a GAF

of 65 and recommended that she start seeing a counselor as well. (Tr. 449)

On July 10, 2007, The Plaintiff reported to Dr. Conner that her medications were

working well.  She requested a refill on her medications instead of having to get them

from Dr. Morgan due to the expense of traveling to Memphis.  Dr. Conner reported that

the Plaintiff had experienced "no psychotic episodes" since she had begun taking

Seroquel.  (Tr. 584)

## III.   ALJ's DECISION

The ALJ followed the required five-step sequence to determine: (1) whether the

claimant was engaged in substantial gainful activity; (2) if not, whether the claimant had a

severe impairment; (3) if so, whether the impairment (or combination of impairments)

met or equaled an impairment listed in the Listing of Impairments in Appendix 1, Subpart

P, 20 C.F.R. Part 404; (4) if not, whether the impairment (or combination of impairments)

prevented the claimant from doing past relevant work.  If the claimant has sufficient

residual functional capacity to perform past relevant work, the inquiry ends and benefits are denied.  20 C.F.R.  §§ 404.1520(a)(4)(iv); 416.920(a)(4)(iv).

In his decision, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the onset of her alleged disability, although she had worked part time as a substitute teacher.  (Tr. 28)  He found that Plaintiff had severe mental impairments, but that her mental impairments did not meet or equal an impairment found in the Appendix 1 Listing of Impairments.  (Tr. 28)  He also found that Plaintiff's subjective allegations were not entirely credible.  (Tr. 28)  The ALJ determined that Plaintiff had the residual functional capacity to perform work-related activities at the semi-skilled level with no exertional limitations.  (Tr. 28)

At Step Four of the evaluation, the ALJ found that Plaintiff could perform her past relevant work as an assembly worker and cashier (Tr. 29), because both jobs were categorized as light and either unskilled or semi-skilled.  This finding was supported by the testimony of a vocational expert.  (Tr. 636)  The ALJ concluded that Plaintiff was not disabled under the meaning of the Act and that she was, accordingly, not entitled to benefits.  (Tr. 29)

In reaching his decision, the ALJ rejected the opinion of the Plaintiff's general practitioner that the Plaintiff was "not able to return to work now or in the future."  (Tr. 448)  The ALJ conceded that a treating physician's opinion is generally entitled to "great

weight," but noted that he was not bound by a treating physician's opinion on the ultimate issue, *i.e*., whether a claimant is disabled.  (Tr. 25)

He also rejected the opinion because Dr. Conner did not have specialized training in mental impairments, as did Plaintiff's treating psychiatrist, Dr. Morgan.  (Tr. 25-26) Finally, he rejected the opinion because he found it contrary to the opinion of Plaintiff's treating psychiatrist.

## IV.   ANALYSIS

### A.      Standard of Review

This Court's review of the Commissioner's decision is limited to determining "whether the Commissioner's decision is supported by substantial evidence on the record as a whole."  *Reed v. Barnhart*, 399 F.3d 917, 920 (8th Cir.2005).  "Substantial evidence 'is less than a preponderance, but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion.'"  *Chunn v. Barnhart*, 397 F.3d 667, 671 (8th Cir. 2005)(quoting *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000)).  In reviewing the record as a whole, the Court must consider evidence that detracts from the Commissioner's decision as well as evidence that supports it.  *Porch v. Chater*, 115 F.3d 567, 571 (8th Cir. 1997).

### B.      Plaintiff's Assignment of Error

The Plaintiff argues that the ALJ erred in disregarding the opinion of Dr. Conner, Plaintiff's primary care physician, who opined that the Plaintiff was "unable to return to

8

work now or in the future." (Tr. 448)  She argues that it was error for the ALJ to

disregard Dr. Conner's opinion because: (1) Dr. Conner was qualified, as a general

practitioner, to diagnose and treat mental disorders; and (2) Dr. Conner's opinion was not

"contrary to" the opinion of Dr. Morgan, Plaintiff's treating psychiatrist.  According to

the Plaintiff, Dr. Morgan's findings support Dr. Conner's opinion that the Plaintiff was

unable to work.

### C.      Discussion

It is true that a treating physician's medical opinion is entitled to substantial

weight, but "statements that a claimant could not be gainfully employed are not medical

opinions but opinions on the application of the statute, a task assigned solely to the

discretion of the Commissioner."  *Krogmeier v. Barnhart*, 294 F.3d 1019, 1023 (8th Cir.

2002)(citations omitted); see also *Ellis v. Barnhart*, 392 F.3d 988, 994 (8th Cir. 2005) ("A

medical source opinion that an applicant is 'disabled' or 'unable to work,' however,

involves an issue reserved for the Commissioner and therefore is not the type of 'medical

opinion' to which the Commissioner gives controlling weight."); 20 C.F.R.§ 416.927(e);

Social Security Ruling 96-5p. "Giving controlling weight to [treating physician's]

opinions would, in effect, confer upon the treating source the authority to make the

determination or decision about whether an individual is under a disability, and thus

would be an abdication of the Commissioner's statutory responsibility to determine

whether an individual is disabled."  Social Security Ruling 96-5p.

The Plaintiff also argues that Dr. Conner's opinion regarding Plaintiff's disability is consistent with that of Dr. Morgan. A careful review of medical records from Dr. Morgan, however, indicate that the Plaintiff's medications and treatment were effective.

On December 8, 2006, Dr. Morgan noted that the Plaintiff's mood was stable; that there was no overt psychotic symptomatology, delusional thinking, or grandiosity; and that her thought processing was "integrated." (Tr. 444) On January 19, 2007, Dr. Morgan reported that Plaintiff's mood was stable; there was no psychotic symptomatology, delusional thinking, or grandiosity. (Tr. 445) Furthermore, he noted that Plaintiff was "less vulnerable to day to day stressors," and that her ability to cope with normal day-to-day issues was improved. (Tr. 445) After Plaintiff's appointment with Dr. Morgan on March 2, 2007, Dr. Morgan's assessment remained unchanged from his January notes. (Tr. 446) The hearing was held on April 25, 2007, less than six weeks after Plaintiff's March, 2007 appointment. Significantly, at all appointments, Dr. Morgan found that Plaintiff had a GAF rating consistent with only mild symptoms. (Tr. 445-449) See AMERICAN PSYCHIATRIC ASS'N, DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS 32 (4th ed. Text Revision 2000).

Furthermore, Dr. Conner's opinion that Plaintiff was disabled is inconsistent with his own records of Plaintiff's progress. Although Dr. Conner's opinion letter is dated April 25, 2007, he apparently last saw Plaintiff for symptoms of mental illness in July of 2006, shortly after her psychotic break in June 2006. After examining Plaintiff on July

28, 2006, Dr. Conner  noted that Plaintiff was feeling much better, and was sleeping better at night until previous two  nights.  (Tr. 434)   He also noted that the Plaintiff had "no significant anxiety" at that time.  (Tr. 434)

There is no doubt that the Plaintiff suffered from anxiety, and the ALJ conceded as much.  In fact, the Plaintiff was hospitalized in July of 2006, with a psychotic break.  However, since that time, the medical records from both Dr. Conner and Dr. Morgan indicated that her medications effectively had managed her anxiety disorder, and she had experienced no other psychotic episodes.  "If an impairment can be controlled by treatment or medication, it cannot be considered disabling."  *Brown v. Barnhart*, 390 F.3d 535, 540 (8th Cir. 2004) (citations omitted).

An ALJ's assessment of a claimant's residual functional capacity is acceptable if it is supported by some medical evidence based upon the ALJ's independent review of the record.  *Krogmeier*, 294 F.3d at 1024.  Furthermore, the assessment of residual functional capacity is based upon all the evidence in the record, not only the medical evidence.  *Dykes v. Apfel*, 223 F.3d 865, 866-867 (8th Cir. 2000).  In this case, the Plaintiff's activities of daily living bolster the finding that Plaintiff is capable of performing light work.

Activities of daily living should not, standing alone, direct a finding that a Plaintiff is not disabled.  See *Baumgarten v. Chater*, 75 F.3d 366, 369 (8th Cir.1996) (a plaintiff's ability to perform light housework and visit with friends "provides little or no support for

the finding that a claimant can perform full-time competitive work." In this case, however, the Plaintiff's activities of daily living were consistent with the ALJ's findings that the Plaintiff retained the ability to perform unskilled and semi-skilled work.

Of course, there must be some medical evidence that supports the ALJ's residual functional capacity finding. *Dykes*, 223 F.3d at 866-867  In this case, there is ample medical evidence to support the finding that the Plaintiff had the residual functional capacity to perform light work, as set out above.

## V.     CONCLUSION

The Commissioner's decision in this case was supported by substantial evidence, including medical evidence from Plaintiff's treating psychiatrist and her primary care doctor.  Accordingly, the Commissioner's decision is affirmed, and the case is hereby dismissed with prejudice.

DATED this 25th day of September, 2008.

_____
UNITED STATES MAGISTRATE JUDGE